1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11
12        M.L.N.,                                    Case No. 2:20-cv-01051-SHK
13                                  Plaintiff,
14                      v.                            OPINION AND ORDER
15        ANDREW M. SAUL, Commissioner of
          Social Security,
16                                 Defendant.
17
18            Plaintiff M.L.N.[1] ("Plaintiff") seeks judicial review of the final decision of

19    the Commissioner of the Social Security Administration ("Commissioner,"

20    "Agency," or "Defendant") denying her application for disability insurance

21    benefits ("DIB") and supplemental security income ("SSI"), under Titles II and

22    XVI of the Social Security Act (the "Act").  This Court has jurisdiction under 42

23    U.S.C. §§ 405(g) and 1383(c)(3), and, pursuant to 28 U.S.C. § 636(c), the parties

24    have consented to the jurisdiction of the undersigned United States Magistrate

25    Judge.  For the reasons stated below, the Commissioner's decision is REVERSED

26    and this action is REMANDED for further proceedings consistent with this Order.

27    ───────────────

28    [1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with
      respect to Plaintiff's medical records discussed in this Opinion and Order.

## I.     BACKGROUND

Plaintiff filed applications for DIB and SSI on February 22, 2016, alleging disability beginning on August 1, 2008.  Transcript ("Tr.") 18, 1159-60.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on December 31, 2018, ALJ Mary Ann Lunderman determined that Plaintiff was not disabled.  Tr. 18-29.  Plaintiff sought review of the ALJ's decision with the Appeals Council; however, review was denied on December 10, 2019.  Tr. 1-7.  This appeal followed.

## II.     STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted).  In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted).  A reviewing

---

[2] A certified copy of the Administrative Record was filed on August 3, 2020.  Electronic Case Filing Number ("ECF No.") 18.  Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III.   DISCUSSION

### A.   Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

(a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(a), 416.920(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. §§ 404.1520, 416.920. The claimant carries

3

1    the burden of proof at steps one through four, and the Commissioner carries the
2    burden of proof at step five.  Tackett, 180 F.3d at 1098.

3         The five steps are:

4              Step 1.  Is the claimant presently working in a substantially gainful
5         activity [("SGA")]?  If so, then the claimant is "not disabled" within
6         the meaning of the [] Act and is not entitled to [DIB or SSI].  If the
7         claimant is not working in a [SGA], then the claimant's case cannot be
8         resolved at step one and the evaluation proceeds to step two.  See 20
9         C.F.R. § 404.1520(b).[3]

10             Step 2.  Is the claimant's impairment severe?  If not, then the
11        claimant is "not disabled" and is not entitled to [DIB or SSI].  If the
12        claimant's impairment is severe, then the claimant's case cannot be
13        resolved at step two and the evaluation proceeds to step three.  See 20
14        C.F.R. § 404.1520(c).

15             Step 3.  Does the impairment "meet or equal" one of a list of
16        specific impairments described in the regulations?  If so, the claimant is
17        "disabled" and therefore entitled to [DIB or SSI].  If the claimant's
18        impairment neither meets nor equals one of the impairments listed in
19        the regulations, then the claimant's case cannot be resolved at step
20        three and the evaluation proceeds to step four.   See 20 C.F.R.
21        § 404.1520(d).

22             Step 4.  Is the claimant able to do any work that he or she has
23        done in the past?  If so, then the claimant is "not disabled" and is not
24        entitled to [DIB or SSI].  If the claimant cannot do any work he or she
25        did in the past, then the claimant's case cannot be resolved at step four

26

27
---
28   [3] The Court has also considered the parallel regulations set forth in 20 C.F.R. § 416.920 et seq.,
     when analyzing the ALJ's denial of Plaintiff's SSI application.

4

1    and the evaluation proceeds to the fifth and final step.  See 20 C.F.R.

2    § 404.1520(e).

3         Step 5.  Is the claimant able to do any other work?  If not, then

4    the claimant is "disabled" and therefore entitled to [DIB or SSI].  See

5    20 C.F.R. § 404.1520(f)(1).  If the claimant is able to do other work,

6    then the Commissioner must establish that there are a significant

7    number of jobs in the national economy that claimant can do.  There are

8    two ways for the Commissioner to meet the burden of showing that

9    there is other work in "significant numbers" in the national economy

10   that claimant can do: (1) by the testimony of a vocational expert

11   [("VE")], or (2) by reference to the Medical-Vocational Guidelines at

12   20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this

13   burden, the claimant is "not disabled" and therefore not entitled to

14   [DIB or SSI].  See 20 C.F.R. §§ 404.1520(f), 404.1562.  If the

15   Commissioner cannot meet this burden, then the claimant is

16   "disabled" and therefore entitled to [DIB or SSI].  See id.

17   Id. at 1098-99.

18   **B.   <u>Summary Of ALJ And Agency's Findings</u>**

19   The ALJ determined that "[Plaintiff] meets the insured status requirements

20   of the . . . Act through June 30, 2011."  Tr. 20.  The ALJ then found, at step one,

21   that "[Plaintiff] has not engaged in [SGA] since August 1, 2008, the alleged onset

22   date (20 C.F.R. 404.1571 et seq. and 416.971 et seq.)."  Id.  At step two, the ALJ

23   found that "[Plaintiff] has the following severe impairments: osteoarthritis, obesity,

24   disorder of the female genitals, chronic liver disease, affective disorder and

25   borderline intellectual functioning.  (20 CFR 404.1520(c) and 416.920(c))."  Id.  At

26   step three, the ALJ found that "[Plaintiff] does not have an impairment or

27   combination of impairments that meets or medically equals the severity of one of

28

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 21.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with certain exceptions. Assigned work must be limited to simple, unskilled tasks, learned in 30 days or less or by a brief demonstration. There must be minimal change in the task as assigned. Finally, the assigned work must require no more than occasional contact brief and intermittent business[-]related contact with supervisors, coworkers, and the public.

Tr. 23. The ALJ then found, at step four, that "[Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965)." Tr. 27.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on April 28, 1975 and was 33 years old, which is defined as a younger individual, age 18-44, on the alleged disability date (20 CFR 404.1563 and 416.963)." Id. The ALJ observed that "[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964)." Id. The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See [Social Security Ruling ("SSR")] 82-41 and 20 CFR Part 404, Subpart P, Appendix 2)." Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a)." Id. Specifically, the ALJ found that Plaintiff could perform the sedentary, unskilled occupations of "Lens guager" as defined in the

1  dictionary of occupational titles ("DOT") at DOT 716.687-030, "Table worker"

2  at DOT 739.687-182, and "Addressor" at DOT 209.587-010.  Tr. 28.  The ALJ

3  based her decision that Plaintiff could perform the aforementioned occupations

4  "on the testimony of the [VE]" from the administrative hearing, after

5  "determin[ing] that the [VE's] testimony [wa]s consistent with the information

6  contained in the [DOT]."  Id.

7      After finding that "[Plaintiff] is capable of making a successful adjustment to

8  other work that exists in significant numbers in the national economy," the ALJ

9  concluded that "[a] finding of not disabled is . . . appropriate under the framework

10  of the above-cited rule."  Id. (internal quotation marks omitted).  The ALJ,

11  therefore, found that "[Plaintiff] has not been under a disability, as defined in the

12  . . . Act, from August 1, 2008, through [December 31, 2018], the date of th[e]

13  decision (20 CFR 404.1520(g) and 416.920(g))."  Id.

14      **C.    Issues Presented**

15      In this appeal, Plaintiff raises three issues, whether: (1) "the ALJ can accept

16  [VE] testimony in light of [the Program Operations Manuel Systems

17  ("POMS")]"; (2) "the ALJ can accept testimony in conflict with the DOT"; and

18  (3) "the court should remand for consideration of new and material evidence."

19  ECF No. 19, Joint Stip. at 4.

20      **D.    Court's Consideration Of First Issue**

21      Plaintiff appears to first challenge the ALJ's assessment of her limitations

22  caused by her mental impairments.[4]  Specifically, Plaintiff argues that "[p]art of the

23

24  ───────────────

[4] The Court notes that Plaintiff "concedes to the assessment of severe impairments in the [RFC]

25  assessment" but also, confusingly, asserts that she "cannot work in coordination with or

proximity to others" as a result of her mental impairments.  ECF No. 19, Joint Stip. at 5, 7.  The

26  two assertions taken together are confusing because Plaintiff appears to concede to the ALJ's

RFC assessment in the former statement, and then challenge the ALJ's RFC finding—that

27  Plaintiff can have "occasional contact brief and intermittent business[-]related contact with

supervisors, coworkers, and the public"—by stating that she cannot work with or around others

28  in the latter statement.  Id.; Tr. 23.  Nevertheless, because Plaintiff appears to challenge the

assessment of [RFC] for mental impairments includes responding appropriately to supervision and co-workers" and "[o]ne of the critical functions required for unskilled work is the ability to 'work in coordination with or proximity to others without being (unduly) distracted by them.'" <u>Id.</u> at 6 (citing 20 C.F.R. §§ 404.1545(c), 416.945(c), quoting POMS DI 25020.010 § (g)).  Plaintiff argues, however, that she "cannot work in coordination with or proximity to others." <u>Id.</u> at 7.  Plaintiff adds that because "[t]he limitation afflicting [her] is identified in policy interpretations of the limitations as a critical function of unskilled work[,]" which is what the ALJ limited Plaintiff to in the RFC assessment, "[i]t is not a matter of distraction because whatever the consequence of the coordination of proximity to coworkers is, [she] cannot engage in that critical function by dictate of the [RFC] assessment." <u>Id.</u> at 6-7.  Plaintiff also adds that "[i]n understanding contours of the mental residual functional capacity assessment, POMS DI 25020.010 is a proper reference point." <u>Id.</u> at 7 (citation omitted).  Finally, Plaintiff argues that "[t]he ALJ must articulate an accurate, detailed, and supported [RFC] to the [VE]" and that "[a]n incomplete hypothetical" presented to the VE results in a VE's opinion that constitutes "insubstantial evidence." <u>Id.</u> at 11.

The Court first addresses the ALJ's findings regarding Plaintiff's mental limitations at step three and assesses whether the ALJ's RFC finding incorporates all of Plaintiff's limitations that are supported by the record.

### E.    <u>ALJ's Findings Regarding Plaintiff's Mental Limitations</u>

At step three, when finding that "[t]he severity of [Plaintiff's] mental impairments considered singly in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06[,]" the ALJ found that Plaintiff had only "moderate limitations" in the four "broad area[s] of functioning which are:

---

ALJ's RFC assessment regarding her limitations that are caused by her mental impairments, the Court considers the issue properly raised and addresses it here.

understanding, remembering, or applying information; interacting with others, concentrating, persisting, or maintaining pace; or adapting or managing themselves." Tr. 21.

With respect to the first broad area of functioning—Plaintiff's ability to understand, remember, or apply information—the ALJ found that Plaintiff had only moderate limitations in this area of functioning because although Plaintiff "alleges difficulty with her memory[,]" she "admitted being able to perform household chores, cook meals, play a videogame, crochet, manage finances, go to medical appointments, take medications, and drive." Id. (citations omitted). The ALJ added that Plaintiff "was able to help her stepson with homework[,]" she "was able to provide information about her health and there is [not] any mention of any issues with [Plaintiff's] short-or long-term memory." Id. (citations omitted).

With respect to the second broad area of functioning—Plaintiff's ability to interact with others—the ALJ found that Plaintiff had only moderate limitations in this area of functioning because although Plaintiff "allege[d] difficulty interacting with others[,]" "according to her statements, [she] is able to get along with others, spend time with friends and family, take public transportation, and volunteer her time." Tr. 21-22 (citations omitted). The ALJ added that "the medical evidence shows that [Plaintiff] had a good rapport with providers and was described as polite and cooperative." Tr. 22 (citations omitted).

With respect to the third broad area of functioning—Plaintiff's ability to concentrate, persist, or maintain pace—the ALJ found that Plaintiff had only moderate limitations in this area of functioning because although "[Plaintiff] alleges difficulty with concentration[,]" she "is able to drive, prepare meals, watch television, play videogames, manage funds, and handle her own medical care." Id. (citations omitted). The ALJ added that Plaintiff "was able to help her stepson with homework" and that "the record fails to show any mention of distractibility

1  and an inability to complete testing that assesses concentration and attention." <u>Id.</u>
2  (citations omitted, emphasis added).

3     Finally, with respect to the fourth broad area of functioning—Plaintiff's
4  ability to adapt or manage herself—the ALJ found that Plaintiff had only moderate
5  limitations in this area of functioning because although Plaintiff "allege[d]
6  difficulty managing her mood and reports cutting herself[,]" she "is able to handle
7  self-care and personal hygiene and care for her ill mother." <u>Id.</u> (citations omitted).
8  The ALJ added that Plaintiff's "cutting is superficial and managed through
9  outpatient therapy" and that Plaintiff "does not have any active suicidal
10  ideations[,]" which "is consistent with [Plaintiff's] lack of hospitalizations." <u>Id.</u>
11  (citations omitted).  The ALJ also added that "the objective evidence in the record
12  showed [Plaintiff] to have stable mood and <u>no problems</u> with impulse control." <u>Id.</u>
13  (citations omitted, emphasis added).

14     **F.     <u>Legal Standard</u>**

15     The RFC is the maximum a claimant can do despite her limitations.  20
16  C.F.R. §§ 404.1545, 416.945.  In determining the RFC, the ALJ must consider
17  limitations imposed by all of a claimant's impairments, even those that are not
18  severe, and evaluate all of the relevant medical and other evidence, including the
19  claimant's testimony.  SSR 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ is
20  responsible for resolving conflicts in the medical testimony and translating the
21  claimant's impairments into concrete functional limitations in the RFC.  <u>Stubbs-</u>
22  <u>Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008).  Only limitations
23  supported by substantial evidence must be incorporated into the RFC and, by
24  extension, the dispositive hypothetical question posed to the VE.  <u>Osenbrock v.</u>
25  <u>Apfel</u>, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

26     **G.     <u>Analysis</u>**

27     Here, the ALJ's step-three and RFC findings are not supported by
28  substantial evidence in the record because the ALJ improperly relied on only some

entries in Plaintiff's records when making these findings, while ignoring other evidence that contradicts the ALJ's findings.  See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).  Moreover, the Court observes that the administrative record in this case—at nearly 5,500 pages—is lengthy.  Consequently, the evidence discussed below is only a sample of the contradictory evidence found in this lengthy record that detracts from the ALJ's findings.

For example, first, contrary to the ALJ's finding that Plaintiff can drive, while there was some indication in Plaintiff's medical records that Plaintiff could drive at times, Plaintiff indicated at the August 2018 hearing that she still has her driver's license but that she does not drive "right now" because she gets "panicky on the freeways."  Tr. 39.  Plaintiff added that she had felt "panicky" when driving on freeways for five years leading up to the hearing, that she takes medication to help prevent her from panicking generally, that her medication does not completely alleviate her symptoms, and that her medication causes dizziness and drowsiness. See Tr. 39, 42, 46, 47-48.  Moreover, notations in Plaintiff's medical records support Plaintiff's assertion that she no longer drives, by indicating that Plaintiff reportedly "commutes by bus or has [a] family member give her a ride[,]" Tr. 5415, and that she "relies on rides provided by others as her basic means of transportation[,]" Tr. 2734.

Further, evidence of the side effects caused by Plaintiff's medication were well documented throughout the record.  See, e.g., Tr. 1685-87 (Plaintiff's medication was noted to cause drowsiness and sedation); Tr. 1645 (Plaintiff's medical records stated that "appropriate drowsy/sedation precautions were further discussed" with Plaintiff as a result of her medication); Tr. 1650 (dosage of Plaintiff's medication that caused drowsiness and sedation was increased from 10 milligrams to 20 milligrams and the "drowsy/sedation precautions" were again discussed with Plaintiff); Tr. 2456 (Plaintiff's medications were noted to cause

11

"some chronic nausea" and Plaintiff was noted to experience "hyper startle," "pressured speech, flight of ideas, increased . . . impulsivity, [and] actions completed without concern for consequences.").

The ALJ, however, failed to consider or discuss this evidence. Consequently, because the ALJ failed to consider or discuss evidence that Plaintiff could not drive at times during the relevant time period, that driving exacerbated Plaintiff's panic symptoms, and that Plaintiff's medication that she took to help reduce her panic symptoms caused dizziness, drowsiness, sedation, and chronic nausea—all of which likely detract from Plaintiff's ability to safely drive or maintain substantial gainful employment—the ALJ's finding that Plaintiff could drive without limitation was not supported by substantial evidence in the record and, therefore, does not support the ALJ's finding that Plaintiff had only moderate limitations in the first and third of the four broad areas of functioning as evidence by her ability to drive.

Second, contrary to the ALJ's finding that Plaintiff could "take public transportation," "go to medical appointments, take medications," and "handle her own medical care[,]" Tr. 21, Plaintiff indicated at the hearing that she never goes to her weekly therapy appointments alone, which suggests that Plaintiff requires at least some assistance attending medical appointments. Tr. 53. The record also indicates that Plaintiff does not ride the bus alone and, instead, she "always ha[s] someone with [her,]" and that Plaintiff has to set an alarm to remind herself to eat and take medications. Tr. 39, 1685-87. Moreover, Plaintiff's doctors noted that Plaintiff feared leaving the house without someone with her due to a fear that her knee would give out and she would fall down, Tr. 1643, while other records substantiated Plaintiff's fear of falling by indicating that Plaintiff was "positive for falls," Tr. 3958-59. See also Tr. 1649 (Plaintiff's medical notes stating that Plaintiff has "avoidance of leaving her house, without someone because of fear that

her knee will give out, has a large anxiety component and may also be panic inducing.").

This evidence suggests that Plaintiff needs help or assistive processes to perform basic functions, such as taking public transportation, eating, and taking medications. The ALJ, therefore, erred by failing to consider or discuss this contrary evidence when finding that Plaintiff had only moderate limitations in her mental functioning as a result of Plaintiff's ability to take public transportation, go to medical appointments, take medication, and handle her own medical care. See Holohan, 246 F.3d at 1207-08.

Third, contrary to the ALJ's findings that Plaintiff could perform household chores, cook meals, crochet, handle personal hygiene, and manage finances, Plaintiff indicated at the hearing that she does not do housework and, instead, she takes naps "a couple hours" after she wakes up and cuts herself when she is feeling emotional, which happens "often" and triggers a call to her counselor. Tr. 43. Moreover, as noted above, Plaintiff indicated that her medications make her "very, very drowsy" and "dizzy[,]" make Plaintiff feel "unsteady sometimes" when she is standing, and cause Plaintiff to "take quite a few naps" throughout the day. Tr. 42. Plaintiff added that she can crochet only if she is "in a good state" and that she "usually can only do that for about 30 minutes, and then [she] ha[s] to stop for a while, 30 to 40 minutes." Tr. 44. Plaintiff also added that she can pay bills or handle money "as long as it's not something that [she] ha[s] to do too much talking with people about." Id.

The record supports Plaintiff's above statements. For example, in addition to the side effects noted in Plaintiff's treatment records discussed above, see supra at 11 (citing Tr. 1645, 1650, 1685-87, 2456), Plaintiff's medical records also indicate that Plaintiff's ability to perform activities of daily living ("ADLs"), such as hygiene, self-care, dressing, grooming, household activities, reaching, stirring food, and cooking generally are impaired and that her symptoms are aggravated if she

performs many of these activities.  See, e.g., Tr. 1776-77, 5421.  The record further
indicates that Plaintiff "does not perform all basic household chores unassisted and
does not run errands or go shopping alone" or "cook meals without help"
"because of physical and mental issues[,]" Tr. 2733, and that she also "can't
perform all self-care activities independently, including dressing and bathing
herself[,]" Tr. 2734.

   Consequently, the ALJ's reliance on Plaintiff's ability to perform these
activities when finding that Plaintiff had only moderate functional limitations was
erroneous because the above discussed evidence, which the ALJ ignored, suggests
that Plaintiff has greater limitations than the ALJ found.  See Holohan, 246 F.3d at
1207-08.  Moreover, Plaintiff's ability to perform the above discussed tasks in the
limited way Plaintiff performed them, does not appear to support the ALJ's step
three or RFC findings.  See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998)
("disability claimants should not be penalized for attempting to lead normal lives in
the face of their limitations."); see also Molina v. Astrue, 674 F.3d 1104, 1112-13
(9th Cir. 2012), superseded by regulation on other grounds ("a claimant need not
vegetate in a dark room in order to be eligible for benefits") (citation and internal
quotation marks omitted).

   Fourth, with respect to the ALJ's finding that there "is [not] any mention of
any issues with [Plaintiff's] short-or long-term memory[,]" that Plaintiff "does not
have any active suicidal ideations[,]" that her self-cutting is under control, and that
"the objective evidence in the record showed [Plaintiff] to have stable mood and no
problems with impulse control[,]" these findings overlook contrary evidence in the
record.  Tr. 21-22.  For example, Plaintiff was noted to be shaking and covering her
mouth at the administrative hearing and she indicated at the hearing that her last
suicide attempt was a month before the hearing and that she cut herself the week
before the hearing.  Tr. 50-52.  Plaintiff indicated that she has been cutting herself
since she was fourteen and that she did so to calm herself.  Tr. 48-49.  Plaintiff

added that her medications don't completely alleviate her panic symptoms and that her physical and mental symptoms were getting worse.  Tr. 47-51.  Plaintiff stated that she had been in intensive outpatient therapy three times for her mental conditions and that she had currently been seeing a therapist weekly for one-hour sessions that she never attended alone.  Tr. 53.

Notations in Plaintiff's medical records, which the ALJ did not consider or discuss, supported Plaintiff's above statements.  For example, Plaintiff's medical records noted that:

- Plaintiff, at times, presented with mildly depressed mood and expressive teary affect, and that Plaintiff describes talking about how people would be better off if she was gone, because they could use her life insurance money, Tr. 1685-87;
- Plaintiff "has episodic panic attacks, some difficulty going out in public[,]" she is "tearful, emotional most days, more sadness/low moods[,]" she has "some hopelessness[,]" "reduced motivation, energy, joy[,]" and has "some passive suicidal ideation at times[,]" Tr. 2455;
- Plaintiff has trouble sleeping, "hyper startle," "pressured speech, flight of ideas, increased . . . impulsivity, [and] actions completed without concern for consequences[,]" Tr. 2456;
- Plaintiff, at times, presented with anxious mood and constricted, dysthymic affect, and indicated that "Citalopram not working well anymore for depression and anxiety[,]" Tr. 2457;
- Plaintiff "reports increased anxiety and emotional reactivity in last two weeks; cut herself superficially 3 [times] in [the] last week" and demonstrated "escalating cutting behavior."  Tr. 3195.  This note also stated that Plaintiff "is in daily pain from her knees," she "is limited by her panic and anxiety[,]" she "cannot walk into a building by herself;

15

causes panic[,]" and that Plaintiff "is walking for short periods of time (is limited due to knee pain)." <u>Id.</u>;

- Plaintiff, at times, presented with depressed mood, Tr. 3958-59;
- Plaintiff, at times, presented with depressed, anxious mood & depressed affect, Tr. 3359;
- Plaintiff reportedly "will cry at a drop of a hat. She is also very irritable and short." She "is only sleeping 2-3 hours a night and is startled awake[,]" Tr. 4749;
- Plaintiff had "passive suicidal thoughts 'of wishing that something would happen to [her]' at least 3 x 4x's week," that Plaintiff cuts her ankles and thighs, and punches or hits herself "or a wall to cause pain to herself[,]" Tr. 5416;
- Plaintiff, at times, presented with "impaired" remote memory, soft speech, dysphoric, tearful, irritable, anxious mood and affect, lack of pleasure, "hopeless/worthless" mood and affect, moderately impaired judgment and insight, "poor impulse control[,]" suicidal ideation, and amotivational, isolated, and withdrawn behavior, Tr. 5420 (capitalization normalized);
- Plaintiff reportedly suffered from panic attacks and cuts herself, Tr. 5421;
- Plaintiff's "[m]ood has been deteriorating for the past several years" and she was "[n]ow very tearful," and it was "difficult to control emotions." Tr. 1643. The record further indicated that Plaintiff "also has developed a fear of leaving the house without someone with her due to knee pain[,]" that she "would like help working through her sense of weakness and emotional instability[,]" that she had "poor" sleep, "decreased" interest, she "forgets to eat, [and is] lacking" appetite, she displayed "retarded" psychomotor skills, has a "history of cutting with several

16

suicide attempts," and has "major depression treated with Citalopram and outpatient treatment[,]" id. (capitalization normalized); and

- That Plaintiff "displayed questionable commonsense judgment for her age and for the general population.  For example, when asked what she would do it her home was on fire, [Plaintiff] replied that she would, '[f]reak our & cry & frozen in fear'" and when asked "what number she should call if her home was on fire, she said, 'Not sure.  I think 411.'" Tr. 2734.

The ALJ's failure to consider or discuss this evidence undermines the ALJ's step three and RFC findings because it suggests that—contrary to the ALJ's finding—Plaintiff continued to cut herself throughout the relevant time period, Plaintiff had active suicidal ideations during the relevant time period and even discussed with her doctor how she believed that her family would benefit from her life insurance money if she was gone, that she had impaired remote memory and poor impulse control, and that her mood was often tearful and depressed.  See Holohan, 246 F.3d at 1207-08.

Fifth, with respect to the ALJ's finding that Plaintiff "is able to get along with others, spend time with friends and family, [and] take and volunteer her time[,]" the ALJ again failed to consider or discuss contradictory evidence in the record.  Tr. 22.  For example, the record indicates that Plaintiff volunteered her time by working in a nursing home and with foster kids "in the past" and that she was encouraged to volunteer at a woman's shelter now as a way of "improving her people interaction" skills and because doing so would theoretically "help improve her confidence."  Tr. 1685-87.  Moreover, the record indicates that Plaintiff "has a fair relationship with friends, and all others, 'when I want to be around them.'" Tr. 2733.

The ALJ's failure to consider or discuss this evidence undermines the ALJ's step three and RFC findings because it suggests that—contrary to the ALJ's

finding—Plaintiff's volunteer work was done in the past or at the direction of her doctor and that Plaintiff had a limited ability to get along with others because her relationship with others was fair, only when she wanted to be around other people. See Holohan, 246 F.3d at 1207-08.

Because the ALJ failed to consider or discuss the evidence noted above when making her step three and RFC findings, the Court finds that the ALJ's step three and RFC findings are not supported by substantial evidence in the record. Id. Because the ALJ's RFC finding—and by extension, the dispositive hypothetical question posed to the VE, from whose opinion the ALJ based her step five finding on—did not include all of Plaintiff's functional limitations that were supported by the record, Osenbrock, 240 F.3d at 1163-65, the Court finds that the ALJ's step five finding was not supported by the record.  As such, remand for further proceedings is appropriate here so the ALJ can reassess her step three, RFC, and step five findings in light of the above discussed evidence.  Because the Court remands as to the above issue, it does not address Plaintiff's remaining assignments of error.

## IV.   CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).

IT IS SO ORDERED.

DATED:  Nov. 18, 2020

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge

18